UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | CAUSE NUMBER 3:08-CR-4(01) RM |
| | ) | |
| KEVIN R. SCHULTZ | ) | |

OPINION AND ORDER

This cause came before the court on June 12, 2008 for hearing on the defendant's motions to dismiss and to suppress. For the reasons that follow, the court denies both motions.

Kevin Schultz was convicted in 2005 of the federal crime of trafficking in counterfeit telecommunications instruments, 18 U.S.C. § 1029(a)(7), cause no. 3:04cr008. On December 4, 2007, United States Magistrate Judge Christopher A. Nuechterlein issued a search warrant for Mr. Schultz's residence. The affidavit of Bureau of Alcohol, Tobacco and Firearms Special Agent Jeffrey Emmons supported the application for the warrant.

Special Agent Emmons explained that he received a phone call on November 26, 2007 from "witness #1," who reported that "witness #2" had recently reported being inside Mr. Schultz's house and seeing multiple firearms kept under the mattress. "Witness #1" also said that "witness #3" had reported seeing firearms in Mr. Schultz's house. The next day, Special Agent Emmons verified that Mr. Schultz had the prior conviction and verified with Mr. Schultz's probation officer that the witnesses were talking about Mr. Schultz's house. Also on November 27, Special Agent Emmons spoke with "witness #2," who reported being in Mr.

Schultz's home in June 2007 and seeing a 12-gauge pump action shotgun with a collapsible stock and two Glock pistols kept between a mattress and a box spring, two semi-automatic pistols that were taken from a safe in a bedroom closet, and four .45 caliber pistols and a 9mm pistol in a safe in a bedroom. Also on November 27, Special Agent Emmons spoke with "witness #3," who reported having been in Mr. Schultz's residence many times and seeing guns in the residence, most recently within the previous week.

The search warrant described the residence as follows:

> the entire premises located at 506N. U.S.#421, Medaryville, Indiana, which is a beige sided/red/brown brick ranch single family residence on the east side of U.S.#421. The house has a sign in the front yard of the residence listing "506N. U.S.#421" and is located immediately southeast of a closed down root beer stand. The front door faces west, and in the front yard are two dumpster type trash receptacles. It has an attached garage.

The search warrant was executed on December 7, 2007. Pulaski County Sheriff Gayer, who knew Mr. Schultz from when Mr. Schultz was Medaryville's town marshal, greeted Mr. Schultz at the door and introduced Special Agent Emmons. Eight armed agents and officers entered the house to conduct the search. The agents brought a drug-sniffing dog into the house, apparently just in case; Mr. Schultz asked the agents to be sure its paws were clean. Mr. Schultz was cooperative and non-resistant. Mr. Schultz said he understood why the agents were there, and that he thought he knew who had talked to them. Special Agent Emmons told him that he was not under arrest. Special Agent Emmons

2

asked Mr. Schultz if they could go into the kitchen during the search, and Mr. Schultz agreed.

Special Agent Emmons didn't advise Mr. Schultz of the *Miranda* rights because he didn't view Mr. Schultz as being under arrest. Special Agent Emmons didn't tell Mr. Schultz that he couldn't leave. Mr. Schultz wasn't restrained and cooperated with the agents during the search by opening safes. At one point, he retrieved a paper amounting to indicia of possession so the agents wouldn't need to take a current bill. Mr. Schultz appeared to Special Agent Emmons to be rational and not under the influence of any intoxicant. Neither Special Agent Emmons nor any other agent displayed force or raised a voice toward Mr. Schultz. There was no evidence that Special Agent Emmons told Mr. Schultz he couldn't call his attorney. Mr. Schultz didn't ask to walk around the house during the search; had he done so, officer safety concerns would have led Special Agent Emmons to tell him he couldn't do so. Special Agent Emmons accompanied Mr. Schultz to the bathroom at one point.

About 45 minutes into the search (which eventually took between 90 and 120 minutes), the agents found a shotgun propped up next to a water heater in the attached garage. Special Agent Emmons asked Mr. Schultz what he knew about the shotgun found in the garage, and Mr. Schultz said he was unaware it had been left in garage; he opined that his friend Timothy Weaver, with whom he had gone hunting a few weeks later, must have left it behind. When Special Agent Emmons said the ATF would do a fingerprint analysis, Mr. Schultz said his prints

might be on the shotgun because he had handled it in truck. Mr. Schultz said he once owned the shotgun then, upon his conviction in 2005, gave it to Mr. Weaver. Special Agent Emmons asked for Mr. Weaver's phone number. Mr. Schultz said he wanted to speak to Mr. Weaver first, then he said he was uncomfortable with questioning and wanted to talk to his attorney. Special Agent Emmons stopped asking questions, but Mr. Schultz kept answering.

The agents did not take Mr. Schultz into custody after completing the search. In January 2008, a grand jury indicted Mr. Schultz for one count of being a felon in possession of a firearm and one count of having made false statements concerning the shotgun's ownership. Mr. Schultz has moved to dismiss the indictment and to suppress the shotgun and his statements.

A

Mr. Schultz is charged under 18 U.S.C. § 922(g), which makes it a crime for one convicted of a crime punishable by imprisonment of a term exceeding one year to possess a firearm. In his motion to dismiss the indictment, Mr. Schultz argues that his prior conviction under 18 U.S.C. § 1029(a)(7) for trafficking in counterfeit telecommunications instruments doesn't meet the definition of a crime punishable by more than one year because 18 U.S.C. § 921(a)(20)(A) excludes from this definition "any Federal or State offenses pertaining to antitrust violations, unfair trade practices, restraints of trade, or other similar offenses relating to the regulation of business practices." Mr. Schultz contends that his 2005 conviction

4

falls under the exclusion for offenses relating to the regulation of business practices because § 1029(a)(7) makes it a crime to "knowingly and with intent to defraud us[e], produc[e], traffi[c] in, have control of or custody of or posses[s] a telecommunications instrument that has been modified or altered to obtain unauthorized use of telecommunication services."

Mr. Schultz also claims that the charge should be dismissed because the statutes at issue are impermissibly vague. Mr. Schultz cites Judge Bright's dissent in Stanko v. United States, 491 F.3d 408, 421 (8th Cir. 2007), which criticized the "complete absence of Congressional guidance and scarcity of federal precedent" on this issue and declared § 921(a)(20)(A) "unconstitutionally vague." Mr. Schultz also cites Cuellar v. United States, 2008 WL 2229165 (U.S., June 2, 2008), but the court finds nothing in that holding to be pertinent to the issues this motion places before the court.

No court in this circuit has addressed whether a conviction under § 1029(a)(7) qualifies under the § 921(a)(20)(A) exclusion, and there is little authority of any kind about the meaning of § 921(a)(20)(A). Whether a prior felony qualifies under the exclusion is a question of law for the court rather than one of fact for the jury. *See* United States v. Stanko, 491 F.3d at 412; Untied States v. Hayes, 482 F.3d 749, 750-751 (4th Cir. 2007); United States v. Bethurum, 343 F.3d 712, 716-717 (5th Cir. 2003); United States v. Daugherty, 264 F.3d 513, 514 (5th Cir. 2001).

The court must consider whether Congress intended the phrase "other similar offenses relating to the regulation of business practices" to include convictions for trafficking in counterfeit telecommunications devices. The court agrees with the courts that have held that exclusion "does not extend to all business-related offenses . . . ." United States v. Stanko, 491 F.3d at 415. Instead, the courts that have analyzed whether an offense qualifies under the exclusion have "focused on whether the statute of conviction constitutes the type of offense enumerated in § 921(a)(20)(A), as evidenced by the primary purpose of the criminal statute and the elements the Government must prove for conviction under it." Id. For example, in Dreher v. United States, the court held that mail fraud and conspiracy to commit mail fraud didn't qualify under the exclusion because violations of the applicable statutes in no way depended on whether they had an effect upon competition. 115 F.3d 330, 332-333 (5th Cir. 1997); *accord*, United States v. Meldish, 722 F.2d 26, 27 (2d Cir. 1983) (prior felony conviction under 18 U.S.C. § 542 didn't qualify as a crime excluded under § 921(a)(20(A) because the offense of importing merchandise into the United States by means of a false customs declaration in no way depended on its effect on competition or consumers). The Stanko court applied these principles and determined that a conviction under the Federal Meat Inspection Act didn't qualify for the § 921(a)(20)(A) exclusion because the purpose of the Act is to protect public health, and the offense didn't involve an economic effect on competition or consumers. 491 F.3d at 416.

As in Dreher, Meldish, and Stanko, Mr. Schultz's conviction under § 1029(a)(7) doesn't effect competition or consumers as demonstrated by the elements of the offense, namely: 1) knowingly trafficking in a telecommunications instrument that has been modified or altered to obtain unauthorized use of telecommunications services; 2) intent to defraud; and 3) conduct which affected interstate commerce. That Mr. Schultz's criminal conduct may have incidentally hampered competition or had a negative effect on consumers is not enough to bring Mr. Schultz's prior conviction under the exclusion. *See* id; United States v. Dreyer, 115 F.3d at 332-333.

Neither is the court persuaded by Mr. Schultz's vagueness argument. "A criminal statute is unconstitutionally vague if it does not define the criminal offense with enough specificity to provide people of ordinary intelligence with notice of what is prohibited or if it fails to provide explicit standards to prevent arbitrary and discriminatory enforcement." United States v. Watzman, 486 F.3d 1004, 1009 (7th Cir. 2007). A different outcome might be required had Congress not included "similar" within the exclusion, but no reasonable person of ordinary intelligence could conclude that trafficking in a modified telecommunications instrument to steal cable signals is a crime relating to the regulation of business practices that is similar to antitrust violations, unfair trade practices, or restraints of trade.

The court denies Mr. Schultz's motion to dismiss the indictment.

7

B.

Mr. Schultz's motion to suppress claims that the search of his garage exceeded the scope of the premises listed in the warrant and that the information provided by the witnesses was hearsay and was too stale for the magistrate judge to have found probable cause to issue a search warrant. Mr. Schultz argues that although the warrant contained a description of the premises which stated that the residence had an attached garage, the next section stated that there was reason to believe that firearms and ammunition were at "the residence," without mentioning the garage. Mr. Schultz relies on the garage being referred to explicitly at one place in the warrant but not in the other, and says that the affidavit didn't provide probable cause to search the garage because none of the witnesses mentioned seeing firearms in the garage. As to the staleness argument, Mr. Schultz points out that the affidavit provides no facts about when two of the three witnesses claimed to have observed firearms at Mr. Schultz's residence, and witness #2 reported seeing firearms at Mr. Schultz's residence more than 6 months before the search.

The Fourth Amendment requires that a search warrant contain a description of the place to be searched with particularity. Maryland v. Garrison, 480 U.S. 79, 84 (1987). A search is unconstitutional when it exceeds the scope permitted by the warrant. Horton v. California, 496 U.S. 128, 140 (1990). In United States v. Griffin, the court upheld the validity of a search of a detached garage, noting that a "lawful search of fixed premises generally extends to every

8

part of the premises in which the object of the search may be found." 827 F.2d 1108, 1114 (7th Cir. 1987). As in this case, the warrant in <u>Griffin</u> authorized a search of "the premises," and the court made clear that "the specific mention of the 'house' and 'garage' does not limit the scope of the search to those specific areas, but instead makes the premises to be search more readily identifiable." <u>Id.</u> at 1114-1115. In <u>United States v. Evans</u>, the court held that a warrant authorized the search of a detached garage because "[i]t was reasonable for [the police] to suppose that [the defendant's] use of the property might extend to the garage . . . and that either the house or the garage might contain contraband or evidence of crime." 92 F.3d 540, 543 (7th Cir. 1996). The warrant in this case expressly described both the residence and the attached garage, and it was reasonable to conclude that the firearms in question may have been located in the garage.

That the warrant explicitly mentions the garage in one part but not another has no significance. The probable cause affidavit stated that firearms were believed to be in the residence, and since Mr. Schultz had access to the garage from the residence, it was reasonable for the magistrate judge and the agents to assume that firearms could be stored in the garage.

Affidavits supporting the issuance of a search warrant may use hearsay. <u>Jones v. United States</u>, 362 U.S. 257, 269 (1960); <u>United States v. Spach</u>, 518 F.2d 866, 869 (7th Cir. 1975).

"[S]taleness is evaluated in light of the particular facts of the case and the nature of the criminal activity and property sought." <u>United States v. Collins</u>, 61

9

F.3d 1379, 1384 (9th Cir. 1995) (citations omitted); *see also* United States v. Batchelder, 824 F.2d 563 (7th Cir. 1987) ("The age of the information supporting the application for a warrant is a factor that a magistrate should consider . . . If other factors indicate that the information is reliable and that the object of the search will still be on the premises, then the magistrate should not hesitate to issue a warrant."). Indeed, "[p]assage of time is less critical when the affidavit refers to facts that indicate ongoing continuous criminal activity." United States v. Spry, 190 F.3d 829, 836 (7th Cir. 1999) (*citing* United States v. Pless, 982 F.2d 1118, 1125-1126 (7th Cir. 1992)).

Witness #2's information was updated by an account from witness #3 that Mr. Schultz was seen with a firearm during the month of November, and the witnesses statements indicated an ongoing continuous criminal activity. Witness #2 saw firearms in Mr. Schultz's residence in June 2007, and on November 27, 2007, witness #3 told Agent Emmons that Mr. Schultz was seen with a firearm within the last week. Witness #2's information wasn't stale in light of the updated information from witness #3. *See* United States v. Collins, 61 F.3d at 1384-1385 (concluding that a recent tip updated information that the defendant had been in possession of firearms several months prior to the issuance of the warrant). Accordingly, the totality of the circumstances indicated that the information from the witnesses was reliable. The information provided by the witnesses wasn't stale.

The court denies Mr. Schultz's motion to suppress the evidence seized during the search.

10

C

Finally, Mr. Schultz moves to suppress his statements to Agent Emmons because he was not given the warnings required by Miranda v. Arizona, 384 U.S. 436 (1966). "Under *Miranda,* a suspect interrogated by law enforcement officers while in custody must be notified of his constitutional rights to counsel and against self-incrimination." United States v. Hendrix, 509 F.3d 362, 373 (7th Cir. 2007). The government responds that warnings weren't needed because Mr. Schultz wasn't in custody. In determining whether, under all the circumstances, a person was in custody, courts consider (among other things) the place of the encounter, whether the person consented to speak, whether the person was told he was free to leave and not under arrest, whether the person was moved to another area, any display of weapons or threatening presence of several officers, whether the police kept documents the person would need to leave, and the officers' tone of voice. United States v. Wyatt, 179 F.3d 532, 535 (7th Cir. 1999).

Mr. Schultz was not in custody for purposes of analysis under Miranda. United States v. Thompson, 496 F.3d 807 (7th Cir. 2007), is instructive. In Thompson, two police officers went to the suspect's house and asked if the suspect was willing to speak with them. The suspect agreed and they all entered the living room. Id. at 809. No agent came within two feet of the suspect's face, or touched him in a threatening or intimidating way. The agents gave the suspect permission to, first, get a glass of water from the kitchen and, later, to get a Bible from a closet; an agent accompanied the suspect both times. The conversation

11

lasted a few hours, and the officers departed without arresting the suspect. The court held that no custodial interrogation occurred. Id. at 811.

Two agents approached Mr. Schultz, though many others entered to conduct the search. The number of armed officers points toward custody[1] and make Mr. Schultz's situation different from the situation in Thompson, but all other factors point away from custody. Neither Agent Emmons nor any other officer brandished a weapon, raised a voice, or threatened Mr. Schultz. The questioning took place in Mr. Schultz's home, a place where a reasonable person would feel more comfortable. *See* Beckwith v. United States, 425 U.S. 341, 345-347 (1976); *compare* United States v. Madoch, 149 F.3d 596, 600-601 (7th Cir. 1998). Mr. Schultz was "moved" from the doorway to the kitchen when Agent Emmons asked if they could sit down, but he wasn't moved to a police station or the back seat of a squad car. Mr. Schultz was not told he was free to leave; neither did he ask if he was free to leave. *See* Hall v. Bates, 508 F.3d 854, 857 (7th Cir. 2007). His movement within the house during the search was constrained, but the Thompson case shows this to be unimportant in this setting. 496 F.3d at 811 ("Agent Eley followed Thompson when Thompson went to get a glass of water and his Bible, activities that are not inherently private and that do not establish a

---

[1] Because the issue of custody for Miranda purposes is objective rather than subjective, *see* Stansbury v. California, 511 U.S. 318, 323 (1994) (per curiam), it matters not that Mr. Schultz had been a town marshal. Nonetheless, to the extent it might be argued that his statements were involuntary, a former police officer seems less likely than other persons to be rattled by the mere presence of armed law enforcement officers going about their business.

12

custodial situation by the mere presence of a law enforcement officer."). Mr. Schultz spoke voluntarily (and continued to do so after requesting an attorney).

There was no custodial interrogation, so <u>Miranda</u> warnings were not required. There is no evidence whatsoever to support a suggestion that Mr. Schultz's statements were otherwise involuntary. There is no basis upon which to suppress his statements to Agent Emmons.

D

For the foregoing reasons, the court DENIES the defendant's motion to suppress [Doc. #19] and motion to dismiss [Doc. #26].

SO ORDERED.

Entered:  <u>June 13, 2008</u>

<u>      /s/ Robert L. Miller, Jr.      </u>
Chief Judge
United States District Court
